(104 So. 269)

## BIRMINGHAM BELT R. CO. v. ELLENBURG. (6 Div. 118.)

(Supreme Court of Alabama. Oct. 30, 1924. Rehearing Denied May 14, 1925.)

Commerce &⊷27(7)—Switchman on engine just repaired and returning to work of moving cars in both intrastate and interstate commerce, not engaged in interstate commerce.

Switchman, injured by falling from engine returning to finish moving cars employed in both intrastate and interstate commerce, which it had left that morning, on becoming disabled, held not engaged in interstate commerce, within federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665); but action should have been brought under Workmen's Compensation Law of state.

Gardner, Thomas, and Bouldin, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; Joe C. Hail, Judge.

Action for personal injuries by John W. Ellenburg against the Birmingham Belt Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Cabaniss, Johnston, Cocke & Cabaniss and Sumner E. Thomas, all of Birmingham, for appellant.

The mere expectation of an employé that he will engage in interstate work is not sufficient to identify his employment as interstate. I. C. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; C., B. & Q. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Erie v. Welsh, 89 Ohio St. 81, 105 N. E. 189; Id., 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319; Minneapolis, etc., v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Southern v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; Southern v. Pitchford, 253 F. 736, 165 C. C. A. 330; Shanks v. D., L. & W., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A.

1916C, 797; Shanley v. P. & R. (D. C.) 221 F. 1012; Mayers v. Union, 256 Pa. 474, 100 A. 967; Murray v. P., C., C. & St. L., 263 Pa. 398, 107 A. 21; A. & T. v. Pitts, 25 Cal. App. 751, 145 P. 545; Patterson v. Dir. Gen., 115 S. C. 390, 105 S. E. 746; Norton v. Erle, 170 App. Div. 93, 155 N. Y. S. 769; Fairchild v. Penna., 170 App. Div. 135, 155 N. Y. S. 751; Barbee v. Davis, 187 N. C. 78, 121 S. E. 176.

Black & Harris, of Birmingham, for appellee.

Plaintiff, who had been moving interstate cars, and was returning to that work, and to clear an interstate track, was still engaged in interstate commerce when injured. P. & R. v. Didonato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955; P. & R. v. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. Ed. 958; N. C. R. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; O'Neill v. Sioux City T. Co., 193 Iowa, 41, 186 N. W. 633; O'Donnell v. Dir. Gen., 273 Pa. 375, 117 A. 82; Moore v. Grand Trunk, 93 Vt. 383, 108 A. 334; Oberlin v. O. W. R. & N., 71 Or. 177, 142 P. 554; 10 A. L. R. 1226, note; L. & N. v. Carter, 195 Ala. 382, 70 So. 655, Ann. Cas. 1917E, 292; W. of A. v. Mays, 197 Ala. 367, 72 So. 641; Pedersen v. D., L. & W., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Southern v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69.

SAYRE, J. This action is brought under the federal Employers' Liability Act (35 Stat. 65 [U. S. Comp. St. §§ 8657–8665]), to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of a coemployé while both were in the service of defendant. The first defense is that at the time of the accident plaintiff was not engaged in interstate commerce within the purview of the act. The substantial facts relevant to the contention thus raised are without dispute and may be stated as follows: Defendant operates a local road which transfers cars, carrying interstate and intrastate commerce, between the trunk lines entering Birmingham. Plaintiff was foreman of a switching crew which prior to the accident had been switching freight cars about the railroad yard in East Birmingham. They had been switching cars which were due to move, and were then moving, it may be conceded, in both interstate and intrastate traffic. About 8 o'clock in the morning plaintiff's engine became disabled and plaintiff, with his crew, took it for repairs to the shop or roundhouse more than a mile distant from the yard. Plaintiff was engaged in making up a train on the west main line track of the Seaboard Air Line when his engine became disabled, and, when he took it away, left the said main line track blocked by the train, or part of a train,

which had been placed there, including, it may be stated by way of further amplification, several cars loaded with grain moving in interstate commerce. Upon completion of the repairs, plaintiff and his crew started back with the engine to the yard to resume operations where they had been left off. With two helpers, plaintiff was standing on the footboard across the front of the engine. As the engine approached Thirtieth street, still some distance from the yard, a collision with an automobile on the street appeared imminent, though no collision occurred, and, in the effort to escape the danger thus threatened, plaintiff fell under the engine, where he lost a leg. This happened at 9:15, something more than an hour after the engine became disabled.

The act provides that "every common carrier by railroad while engaged in commerce" between the states, etc., "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," if the injury results in whole or part from the negligence of the carrier or of any of its officers, agent, or employés. A host of cases followed in which the courts have undertaken to deal with the question, of much difficulty in border line cases: Just when are a carrier and its employé engaged in interstate commerce? The first test formula suggested was in this language:

"Is the work in question a part of the interstate commerce in which the carrier is engaged?" Pedersen v. D., L. & W. R. R., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.

The formula of the federal courts now is:

"Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" Shanks v. D., L. & W. R. R., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

Still the answer is one of difficulty, as numerous cases have shown, and to that category, perhaps, in view of federal decisions, the present case may be assigned. Our effort has been to follow the decisions of the Supreme Court of the United States as we understand them.

Defendant does customarily handle cars which are laden or in use in both interstate and intrastate transportation of freight, but its track is wholly within this state. Its engine at the time was drawing neither loaded nor empty cars, so we think it safe to say that it was not engaged immediately in interstate commerce, which is interstate transportation; and so with respect to plaintiff. But were they engaged in a work so closely related to interstate transportation as to be practically a part of it? The engine was being moved back to the yard, there again to engage in the work of shifting cars, making up trains or parts of trains to be transferred from one trunk line to another without regard to whether the freight with which they were laden was moving in interstate or intrastate commerce. In Illinois Central R. R. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, at the time of the fatal injury counted upon, intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city of New Orleans to another. The court entertained no doubt that the liability of the carrier in that case, operating its railroad as a highway for both interstate and intrastate commerce indiscriminately, for injuries suffered by a member of the crew in the course of its general work, was subject to regulation by Congress, whether the particular service being performed at the time of the injury, "isolatedly considered," was in interstate or intrastate commerce, citing cases. But the court, referring to the language of the statute and quoting Pedersen's Case to the effect that "there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce, and while the employé is employed by the carrier in such commerce," held the moving of several cars, all loaded with intrastate freight, from one part of the city to another, was not a service in interstate commerce, and so that the injury and resulting death were not within the statute. And the court, answering the argument made in that case and in substance, repeated here that—

"The mere fact that said switch engine was destined to Chalmette, where the switching engine and crew were to take up other cars, either loaded or empty, belonging to various railroad companies, and take them to a point in the same state, and there turn them over to the yardmaster, who was to deliver them to various railroad systems to be transported to points within and without the state, rendered the fatal trip of said engine a necessary step in the interstate traffic of the railroad company, and constituted the engine itself an instrument of said traffic."

Answering this argument, the court said:

"That he [deceased] was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for, by its terms, the true test is the nature of the work being done at the time of the injury."

The Supreme Court of the United States is the final arbiter of all questions arising under the act of Congress. The case to which we have referred is, for all practical purposes, on all fours with the case at bar, and, so far as we have been able to learn, its authority has not been impaired or questioned. It was cited with approval in C., B. & Q. R. R. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, where substantially its language was repeated, and so in other cases.

In the Behrens Case the engine on which decedent employé was engaged was doing in general the same work as the engine on which plaintiff here was engaged. There, however, at the time of the injury, it was drawing cars loaded with intrastate freight exclusively. In this case the engine was drawing no cars. By quotation from a state case (O'Neill v. Sioux City Terminal, 193 Iowa, 41, 186 N. W. 633) it is suggested that the nature of the freight being hauled in the Behrens Case served definitely to dissociate the work of the engine and its crew from interstate commerce and thereby to distinguish that case from this. But, in order to bring a case under the influence of the federal act, the employé must have been engaged directly in interstate commerce, as, obviously, plaintiff was not, or at the time of his injury must have had some definite assignment to work so closely related to interstate transportation as, for purposes of decision, to be practically a part of it. As the matter appears to us, the case against the control of the federal statute is stronger here than it was in Illinois Central v. Behrens. In that case there was a temporary dissociation from interstate commerce. Here there was a temporary dissociation from commerce of any character. In the Behrens Case the engine was hauling cars loaded with intrastate freight, but had a definite assignment to bring back interstate cars. Here the engine was going back to its work of moving interstate and intrastate cars indiscriminately.

Minneapolis & St. Louis R. R. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, also points to the conclusion we have indicated. In that case the plaintiff was injured while making repairs on an engine, which had been employed in interstate commerce on October 18, before the accident, and was again so employed on October 21, after the accident. The court said:

"This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

Appellee's last suggestion is that the engine was returning to its former place in order to clear up the west main line of the Seaboard Air Line, which it had left blocked, and on this consideration reaches the conclusion that it was engaged in commerce between the states, referring to cases such as Southern R. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69. But this presents only a slightly different phase of the argument already considered. It too has been answered by the authoritative judgments of the Supreme Court of the United States, if we have not misconceived their meaning. In the last-mentioned case plaintiff, in order to clear the track for interstate traffic, was, when hurt, jacking up an interstate car which had been wrecked by a collision. As bearing upon the authority of Illinois Central v. Behrens, supra, which evidently had been cited, the court said:

"Of course, we attribute no significance to the fact that plaintiff had been engaged in inspecting interstate cars before he was called aside by the occurrences of the collision."

As the matter appears to us, our judgment is foreclosed by the federal decisions. Plaintiff should have sought relief under the Workmen's Compensation Law of this state (Code 1923, §§ 7534–7597).

Other questions are argued, as that the negligence complained of, the engineer's operation of the engine at too great speed and without signals of approach, stood not in a causal relation with plaintiff's injury, and that the trial court's instruction to the jury to the effect that, if defendant had adopted a reasonable rule as to speed and signals, which the engineer wantonly violated, such violation was negligence per se; but these contentions we need not discuss.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

### On Rehearing.

PER CURIAM. Application for rehearing overruled.

ANDERSON, C. J., and SAYRE, SOMERVILLE and MILLER, JJ., concur.

GARDNER, J. (dissenting). The opinion of the majority discloses that the case of Illinois Central R. R. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, is considered as controlling here. Upon a reconsideration of the cause, I am persuaded the court has fallen into error in so holding, and am unable to agree. The cases are to my mind readily distinguishable. In the Behrens Case the true test was held to be "the nature of the work being done at the time of the injury," and the court merely concluded that, as at that time the intestate was engaged wholly in intrastate commerce, the case was without the federal statute, and the fact that, upon completion of the intrastate commerce work, he was expected to

engage in other work partaking of interstate character, was immaterial.

The distinction between the Behrens Case and that here under consideration is illustrated by Louisvile & Nashville R. Co. v. Parker, 242 U. S. 13, 37 S. Ct. 4, 61 L. Ed. 119, from which we take the following quotation:

"The business upon which the deceased was engaged at the moment was transferring an empty car from one switch track to another. This car was not moving in interstate commerce, and that fact was treated as conclusive by the Court of Appeals. In this the court was in error, for if, as there was strong evidence to show, and as the court seemed to assume, this movement was simply for the purpose of reaching and moving an interstate car, the purpose would control and the business would be interstate. The difference is marked between a mere expectation that the act done would be followed by other work of a different character, as in Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478, and doing the act for the purpose of furthering the later work."

Here plaintiff, as foreman of the switching crew, had been engaged in switching cars then moving in interstate as well as intrastate commerce. Trouble arose with the engine. At that time two of the main lines were blocked with cars, but before taking the engine to the roundhouse one line [the east main line] was cleared, leaving the west main line of the Seaboard Railroad, an interstate road, blocked. After the expiration of an hour, the engine was repaired at the roundhouse, and plaintiff "started back to the train on the main line," to use plaintiff's expression, and it was on this return trip the injury occurred. In the line of cars left on this west main line were certain cars of grain moving in interstate commerce, and for delivery at Birmingham. As we read and understand plaintiff's evidence [on page 25 of the record], it is to the effect that, among the line of cars left on the main line, and that he "had started back to," were certain grain cars, admittedly, as I understand it, moving in interstate commerce, and which he designates by their numbers, and that he had instructions from his superior at that time to deliver and place those cars that he had started back to move. In any event, plaintiff was at the time of the injury enroute to the train of cars containing interstate as well, also, as intrastate cars, and which blocked the main line of an interstate road. If for the movement and delivery of these interstate cars the movement of the intrastate cars was necessary, it would seem the Parker Case, supra, suffices as an answer that the work engaged in was of interstate character. The fact that the engine had not reached and coupled to the cars is immaterial, as held in New York Central & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298, the court saying:

"If he is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefits of the federal act, although the accident occurred prior to the actual coupling of the engine to the interstate cars."

See, also, N. C. R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159.

In the Behrens Case there was a mere expectation of an engagement in interstate commerce upon completion of an act which was then wholly intrastate. Here the question of expectation is not involved. The engine was moving enroute to the line of cars containing, among others, interstate cars for delivery, and, as said in the Parker Case:

"The difference is marked between a mere expectation that the act done would be followed by other work of a different character * * * and doing the act for the purpose of furthering the later work."

The very situation, as I view it, as here presented, was used by way of illustration in Pedersen v. D., L. & W. R. R., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, where the court uses the following language:

"It was a minor task which was essentially a part of the larger one, *as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce.*" (Italics supplied.)

But these considerations aside, I see no escape from the conclusion of the interstate character of the work at the time of the injury, when it is considered that the line of cars which plaintiff had started back to move were blocking a main line of an interstate road. This situation had, of course, to be remedied before interstate commerce on that line may be resumed.

In Southern R. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69, the track was blocked by a wrecked car, and plaintiff was injured while on his way to render assistance in replacing this wrecked car. The court held that the replacement of this wrecked car entered inseparably into the object of clearing the track, and gave to the operation the character of interstate commerce, and uses in concluding this holding the expression:

"That preparatory movements in aid of interstate transportation are a part of such commerce within the meaning of the act."

Certainly, this engine on its way to move these cars and thereby clear this track was engaged in a preparatory movement in aid of interstate transportation. See, also, Seaboard Air Line Ry. v. Koennecke, 239 U. S. 353, 36 S. Ct. 126, 60 L. Ed. 324.

It is not insisted that weight is to be here

attached to the fact that defendant is a local road. Illinois Central R. Co. v. De Fuentes, 236 U. S. 157, 35 S. Ct. 275, 59 L. Ed. 517; U. S. v. Union Stock Yards, 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226.

In M. & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, cited in the majority opinion, speaking of the engine there in question, the court said:

"It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business, and had not yet begun upon any other."

This brief quotation should be sufficient to demonstrate that the instant case can find no support in that authority. Each case must be determined in the light of its particular facts, and I am persuaded that, viewed from either phase of the case, the majority opinion is erroneous.

I therefore respectfully dissent.

THOMAS and BOULDIN, JJ., concur in the foregoing views.