### VIRONT v. WHEELING & LAKE ERIE RY. CO.
### Civ. A. No. 25964.

United States District Court
N. D. Ohio, E. D.
March 24, 1950.

See also D.C. 10 F.R.D. 45.

———•———

A. H. Dudnik, Cleveland, Ohio, for plaintiff.

John A. Duncan and M. B. & H. H. Johnson, all of Cleveland, Ohio, for defendant.

SHACKELFORD MILLER, Jr., Circuit Judge.

The plaintiff by this action sought recovery for damages in the sum of $50,000.00 for injury to his knee incurred on December 13, 1947, while performing his duties as a yard brakeman in the employ of the defendant. The defendant's motions for a directed verdict at the close of the plaintiff's evidence, and again at the close of all of the evidence, were overruled and the case was submitted to the jury on the issues involved.

The jury returned a verdict for the plaintiff in the amount of $28,000.00, on which judgment was entered. The defendant has moved that the verdict and judgment be set aside and that judgment be entered for defendant in accordance with its motions for a directed verdict, and, in the alternative, that the verdict and judgment be set aside and a new trial granted.

The complaint alleged that the defendant was negligent in permitting loose coal to remain in the yard where plaintiff was required to work, in failing to warn plaintiff of its presence and in failing to adequately light its premises so as to provide the plaintiff with a reasonably safe place in which to work; that the plaintiff, while uncoupling certain cars in defendant's yard, alighted from the side of a gondola car, came in contact with a large chunk of coal, and was thrown to the ground striking his knee with the resulting injury. Defendant's motions for a directed verdict are based upon the claim that the evidence was insufficient to show any negligence on its part in that the mere presence of loose coal in a railroad yard does not, without additional facts, constitute negligence. The Court instructed the jury that the mere fact that a lump of coal was present at the scene of the accident did not by itself amount to negligence and that it was necessary for the plaintiff to show by the evidence that some employee of the defendant was responsible through negligence for its presence, or the presence of the coal was either known to the defendant or had been there a sufficient length of time in which its presence should have been known, and the defendant had failed to exercise due care in removing it within a reasonable time thereafter. The evidence on behalf of the plaintiff showed that the defendant transported a great deal of coal out of its yard, that loose coal was in the yard at times and was picked up by a yard crew whose duty it was to keep the yard clean, that loose coal was a few days prior to the accident littered all over the yard and in the locality of the accident, that at times it was thrown off the freight cars by its employees for use in a shanty stove by other employees in the yard, that because of lack of general overhead lighting the place where the accident occurred was too dark for him to see the coal, and that the accident was caused by plaintiff alighting from the car on such a loose piece of coal. Although defendant's evidence was to the effect that no loose coal was permitted to remain in the yard for an unreasonable length of time, and that no piece of coal was observed after the accident at the place of the accident, we believe the evidence presented a question for the jury under the instructions above referred to. Brown v. Western Railway of Alabama, 338 U.S. 294, 70 S.Ct. 105; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 68, 66 S.Ct. 444, 87 L.Ed. 610, 143 A. L.R. 967; Southern Ry. Co. v. Puckett, 244 U.S. 571, 574, 37 S.Ct. 703, 61 L.Ed. 1321, Ann.Cas.1918B, 69; Baltimore & O. R. Co. v. Kast, 6 Cir., 299 F. 419; Baltimore & O. R. Co. v. Flechtner, 6 Cir., 300 F. 318. Defendant's motion to set aside the verdict and judgment and enter judgment in its favor is accordingly overruled.

We consider it necessary to consider only one of the several grounds relied upon in support of the motion for a new trial, namely, that the verdict is excessive. Rule 59(a), Fed. Rules of Civil Procedure, 28 U.S.C.A., provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The granting of a new trial by the trial court on account of excessive damages, where remittitur is not considered appropriate, has long been recognized in the Federal courts as a matter addressing itself to the discretion of the trial judge. Hettrick Mfg. Co. v. James A. Shepherd & Co., 6 Cir., 295 F. 10, 15; Spokane P. & S. Ry. Co. v. Cole, 9 Cir., 54 F.2d 318, 321; Eberhart v. Crystal Springs Bleachery, D.C.E.D.Tenn., 1 F.R.D. 778; Jones v. Pennsylvania R. Co., D.C.E.D. N.Y., 35 F.Supp. 1017, 1019. See Montgomery-Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147; Schendel v. Bradford, 106 Ohio St. 387, 140 N.E. 155. In the opinion of the Court the verdict was excessive and can not be justified by the evidence.

The evidence showed plaintiff's injury to be as follows: After the accident he got up and walked around a bit and was then taken home in an automobile of another employee. His knee was swollen and painful but he thought it would get well and did not go to a doctor for a few days. The Railroad doctor gave him some liniment and an elastic kneebrace. He returned to work on February 6, 1948, and worked irregularly until March 21, 1948. While so working he complained about his knee being unstable and the company sent him to its doctor in Canton, Ohio, who prescribed a leather and metal brace extending downward from around the thigh above the knee and going under the shoe. It was not necessary to wear it when he was not working. He discontinued his employment as a brakeman because at times his knee would give away and he would fall. There was no fracture of any bone. There was a looseness or laxity in the knee joint and conditions indicative of an injury to a ligament within the joint or some disturbance in the cartilage. Dr. Wallace S. Duncan, testifying for the plaintiff, stated that he should be operated upon and have the torn cartilage taken out, that the surgeon's fee would amount to from $150 to $200, that he would be in the hospital from 4 to 5 days and that with the removal of the split cartilage, he ought to have a good functional result, although it was not guaranteed. The plaintiff after he left the employ of the defendant acquired a gasoline station which he operated until some time in July 1948. The business was unsuccessful and he disposed of it. In September 1948, he purchased a beverage distributing truck and has worked regularly in that business thereafter. His net income from the business in 1949 was about $3,000. Moving pictures, taken of the plaintiff while working in this employment and put in evidence by the defendant, showed normal physical activity on the part of the plaintiff and no apparent evidence of disability. Under the foregoing facts, the verdict appears to the Court to be excessive. The Court is of the opinion that it is inadvisable to suggest a remittitur.

Defendant's motion for a new trial is sustained.