17306.    SMITH *v.* BUGG, receiver.

The evidence presented questions of fact for determination by a jury, and the court erred in directing a verdict and in overruling the motion for a new trial.

DECIDED JUNE 15, 1926.

Damages; from Fulton superior court—Judge Humphries. March 22, 1926.

Application for certiorari was made to the Supreme Court.

*D. F. Pope, Harwell, Fairman & Barrett,* for plaintiff.

*Colquitt & Conyers,* for defendant.

LUKE, J.  Mrs. Mamie Johnson (now Mrs. Smith) brought suit for damages against B. L. Bugg, receiver of the Atlanta, Birmingham & Atlantic Railway Company, on account of the death of her husband, Epp Johnson, which was caused by the derailment of a coach on a train of that company in which he was riding. The court directed a verdict for the defendant. The plaintiff made a motion for a new trial, in which she alleged error because of the exclusion of certain evidence and because of the direction of the verdict. She now excepts to the overruling of her motion for a new trial.

---

Carriers, 10 C. J. p. 719, n. 2; p. 720, n. 13; p. 1066, n. 71; p. 1067, n. 74.

Trial, 38 Cyc. p. 1532, n. 23, 24.

The plaintiff alleged that her husband was a section boss at Woodbury, Georgia, for the defendant company; that procuring hands to work on his section-gang was a part of his duty; that on the morning on which he was killed he was returning from Atlanta, where he had come to procure such hands; that he was acting in the course of his employment and was in the discharge of his duty at the time of his death, and that the derailment of the coach which resulted in his death was due to the negligence of the defendant company. The defense urged by the railway company was that "at the time of the accident and injury complained of the said E. Johnson was riding on a free pass which had been issued to him by the defendant, and which contained the following condition: 'The person accepting and using it thereby assumes all risk of accident to person or property. . . I accept the above condition. [Signed] E. Johnson.'"

In the case of *Brooks* v. *Bugg*, 34 *Ga. App.* 761 (131 S. E. 365), it was held that when a pass (identical with the one under consideration) was being used by the holder "for his individual pleasure or on business of his own, the pass when being so used was 'gratuitous and not in consideration of services,' and 'the stipulations contained in it and on which it is accepted, including one exempting the company from liability in case of injury, are enforceable.'" And in the case of *Lanier* v. *Bugg*, 32 *Ga. App.* 294 (123 S. E. 145), it was held that where a person is riding on such a pass as the one now under consideration, if his travel is in no way connected with his employment, the provision in the pass as to exemption of the railway company from liability is enforceable, and the defendant company "is not liable for an injury to him because of *mere negligence,* though gross, the parties having, as they were free to do, provided otherwise by their contract. The company can not be held liable in such case unless the injury was inflicted wilfully and wantonly." There is no allegation or contention in the instant case that the negligence of the defendant company was wilful and wanton, and the degree of negligence proved in the instant case was no greater than that in the above-cited cases, in one of which a nonsuit was granted, and in the other a verdict directed in favor of the railway company, and both judgments were upheld by this court.

Since under the *Lanier* and *Brooks* cases, supra, and other au-

thorities, the clause providing for exemption from liability was enforceable, and the company was not liable *unless* the deceased at the time of his death was traveling on business for the defendant company, and since the record discloses ample evidence of negligence of the defendant company, and undisputably enough to submit that particular issue to a jury, the only remaining question for adjudication is whether or not there was any evidence admitted or illegally rejected which showed that the deceased, at the time of his death, was traveling on business for the defendant company. Under the facts of this case this question becomes vital, and if there was any material and admissible evidence on the subject it should have been submitted to the jury. It is error to withhold from the jury consideration and solution of all doubtful questions of fact on material issues which could reasonably arise from the evidence. The jury are the arbiters on questions of fact, "the chemists of the law." *Howard* v. *Savannah Electric Co.,* 140 *Ga.* 482, 486 (79 S. E. 112); *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209); *Hardy* v. *A. & W. P. Railroad Co.,* 20 *Ga. App.* 303, 307 (93 S. E. 18).

In the case of *Tharp* v. *Central of Ga. Ry. Co.,* 31 *Ga. App.* 598 (121 S. E. 592), this court said: "An employee of a railroad company, while being carried to and from his place of work as a part of the contract of service, is regarded as a servant of the company, and not as a passenger. His status as such is not altered by the fact that his right to travel under his contract of service is evidenced by a so-called free pass, containing a stipulation printed thereon and assented to by him, that it is given by the company as a gratuity only, and upon the condition that he releases the company from all liability for injuries which may be received by him as the result of the company's negligence while using this pass. See, in this connection, *Southern Ry. Co.* v. *West,* 4 *Ga. App.* 672 (62 S. E. 141); Beale & Wyman, Railroad Rate Regulation (1st ed.), § 153. Since such an employee is not a person riding gratuitously and receiving transportation extended to him by the company as a favor and without consideration, the company can not, in a suit by the employee for injuries received while riding to his work (which in the case under consideration was between two points in this State), defend upon the ground that the plaintiff when injured was riding upon a free pass which entitled the em-

ployee to transportation only between two points within this State, and that the defendant was for this reason not liable to him for any injuries caused as the result of the failure of the defendant to exercise due care. This being a suit against the railroad company by a person injured while riding upon one of the defendant's trains, and the evidence authorizing the *inference* that the plaintiff was at the time an employee under circumstances above indicated, and there being some evidence that the plaintiff's injuries were received as the result of the failure of the defendant to exercise towards the plaintiff the degree of care legally due him under such circumstances, it was error to grant a nonsuit." (Italics ours.)

In the instant case there was considerable testimony offered for the purpose of showing that the deceased was traveling on business for the company at the time of his death; which was properly rejected by the trial court. However, the court erred in withholding from the jury the testimony of W. H. Waters, hereinafter set out. The deceased met Waters in the terminal station in Atlanta while on this trip alleged to have been made for the purpose of procuring section-hands and only about an hour before his death. Waters testified: "He (deceased) asked me what I was doing, and I told him I was working for Mr. Garmany. He says 'How about coming out and working for me?' I told him I didn't reckon I could go, I had about as good a job as I needed, as nice people as anybody wanted. . . He said if I would go he would carry me right on out with him, and get me a place to stay." This evidence was improperly rejected as hearsay. It was direct and positive evidence that the deceased, on this particular trip, did actually try to hire the witness to work on his section, and it had considerable probative value to show that the deceased was on business for the company at this time. The fact that the deceased ran up on Waters casually, and that Waters was an old section-hand and acquaintance of the deceased, in no way renders the evidence insufficient, as stated by the trial judge. On the contrary, it was not unreasonable for the deceased to have come to a thickly populated place like Atlanta in an effort to find hands, without having any particular one in mind, and the fact that Waters had formerly been engaged in doing this kind of work makes it all the more probable that the deceased should try to hire him. However, be

that as it may, the fact remains .that *deceased did try to hire Waters*. With this testimony erroneously repelled, the .direction of a verdict was error.

The court erred also in excluding the following testimony of Frank Greer: "I know that Epp Johnson, my section foreman, made a trip to Atlanta, Ga., on or about March 11, 1922, over the A., B. & A. Railroad. For a little while prior to March 12, 1922, labor conditions were bad on this railroad, and it was difficult to keep hands to work on the section at that time. It was kind of hard to keep hands. As to what reason I know caused it to be difficult to keep hands to work on the section, labor was scarce around here. The strike was on at that time, and Mr. Johnson came here when the strike was on. He told me he was going up there after ·hands." This evidence tended to show the reason, the motive, the occasion, the necessity for Johnson, the deceased section foreman, coming to Atlanta to get hands for his section, and coming on a day when he was not at work on the tracks of the defendant company. It also showed an emergency on account of the strike, and Johnson's loyalty to and efforts in behalf of his employer during such an emergency. It has probative value when taken alone, but when linked with Waters' testimony it is all the more relevant and material, because the testimony of the one shows the necessity for making the trip to get hands, while the testimony of the other shows that he did actually endeavor to get the hands while on the trip. The evidence quoted above may or may not have been sufficient to convince the jury that the deceased at the time of his death was traveling on business for the defendant company, but under the strict rule that "a verdict should not be directed unless there is no issue of fact, or unless the proved facts, viewed from every possible legal point of view can sustain no other finding than that directed," it should have been submitted to the jury for their consideration.

This evidence that the deceased was traveling on business for the defendant company at the time of his death, differentiates the instant case from the *Lanier* and *Brooks* cases, supra, which otherwise would be controlling.

Since the evidence presented questions of fact for determination

by a jury, the court erred in directing a verdict and in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*